FILED

2012 May-14  PM 04:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **PHYLLIS IRENE STEWART,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:11-CV-2103-VEH** |
| | ) |
| **MICHAEL J. ASTRUE, as** | ) |
| **Commissioner, United States Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

Plaintiff Phyllis Irene Stewart ("Ms. Stewart") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act (the "Act").  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). [1] Ms. Stewart timely pursued and exhausted her administrative remedies available

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g),

§ 205(g) of the Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Stewart was a 50-year-old female at the time of her hearing before the

administrative law judge (the "ALJ") held on April 30, 2010.  (Tr. 29, 26).  In terms

of education, Ms. Stewart completed the eighth grade and stopped attending high

school during the ninth grade when she was sixteen years old.  (Tr. 29, 39).  She did

not obtain a GED.  (*Id.*).

Ms. Stewart's prior work experience over the past fifteen years was as a general

laborer in such positions as harness assembler, hand sander, and masker in the

electronics industry.  (Tr. 32-33, 43).  Ms. Stewart never has held a supervisory

position.  (Tr. 32).

Ms. Stewart  protectively applied for DIB and SSI on October 17, 2008. (Tr.

16, 47, 49).  Ms. Stewart maintains that she became disabled on April 1, 2007, due

to degenerative joint disease of lumbar spine.  (Tr. 16, 47, 49).  Her claim was denied

initially on November 25, 2008.  (Tr. 16, 47, 49).

Ms. Stewart timely filed a request for a hearing that was received by the Social

---

[2]  42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C.
§ 405(g) fully applicable to claims for SSI.

Security Administration on December 18, 2008. (Tr. 16, 58). A hearing was held on April 30, 2010, in Florence, Alabama. (Tr. 16, 26).

On May 28, 2010, the ALJ concluded Ms. Stewart was not disabled as defined by the Act and denied her DIB and SSI applications. (Tr. 16-22). On July 12, 2010, Ms. Stewart submitted a request for review of the ALJ's decision. (Tr. 9-10). On April 20, 2011, the Appeals Council denied review, which resulted in the ALJ's disability determination that was adverse to Ms. Stewart becoming the final decision of the Commissioner. (Tr. 1).

On June 16, 2011, Ms. Stewart initiated her lawsuit with this court asking for a review of the ALJ's decision. (Doc. 1). On November 1, 2011, Ms. Stewart filed a brief (Doc. 7) in support of her appeal, and on December 1, 2011, the Commissioner answered with his responsive brief. (Doc. 8). Ms. Stewart followed with a reply brief (Doc. 9) on December 9, 2011. This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.[3]

---

[3] The undersigned has rendered several other comparable decisions which have reversed the Commissioner due to an underdeveloped record and/or an inadequately supported residual functional capacity ("RFC") determination from which the framework, analysis, and disposition of this case persuasively flow. *See, e.g., Howard v. Astrue*, No. 3:10-CV-527-VEH, (Docs. 15, 16) (Dec. 16, 2010) (reversing and remanding when RFC finding is not supported by substantial evidence); *Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (same);

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide

---

*Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same).

the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[4]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in

---

[4]  The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through April 19, 2012.

sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)   whether the claimant can perform her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## <u>FINDINGS OF THE ADMINISTRATIVE LAW JUDGE</u>

The ALJ found Ms. Stewart had not engaged in substantial gainful activity since the alleged onset date of her disability, *i.e.*, April 1, 2007.  (Tr. 18 ¶ 2).  Thus, the claimant satisfied step one of the five-step test.  20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following severe impairment:  degenerative joint disease (DJD) of the lumbosacral spine[.]" (Tr. 18 ¶ 3).  Accordingly, the ALJ concluded that Ms. Stewart satisfied the second step of the sequential disability evaluative process.  20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Stewart did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19 ¶ 4).  Ms. Stewart contests this determination on appeal.  More specifically, Ms. Stewart maintains that she meets the criteria under Listing 12.05C.  (Doc. 7 at 6).

Regarding Ms. Stewart's I.Q. testing results and mental abilities, the ALJ found:

> While these scores on their face would appear to show that the claimant is mentally retarded, they are not a reliable measure of what they p[ro]pose to measure.  There are several factors that make the scores questionable.  First, since the attorney requested the testing, he was asked to give some background on why the testing came about.  He answered that he generally has all of his clients that have less than a high school education undergo such testing.  Close reading of the testing results indicates that the examiner had no background information other than what was relayed by the claimant.  Although the claimant is indicated in the report as having an 8th grade education, the examiner was apparently unaware that the claimant received no special education.  There are no school records to support that she was ever considered as mentally retarded while in school.  The report nowhere indicates that the test is a valid representation of the claimant's lifelong level of functioning.  There is also no indication as to whether the claimant was

motivated for test taking purposes. There is no comment in the examination in regard to the claimant's adaptive functioning or any indication that the examiner was aware of her work history. . . . Furthermore, the claimant's verbal statements, spelling, and method of expression contained in Exhibit 3E are totally inconsistent with a full-scale IQ of 70 and also totally inconsistent with the verbal IQ of 58 as reported in the psychological assessment contained in Exhibit 7F.

[T]he claimant is not mentally retarded, but functioning well within the limits of her 8th grade education and that the testing and the report are not a valid representation of the claimant's lifelong level of intellectual functioning. One could conclude that the testing was merely performed for the purposes of establishing an impairment to be considered for social security purposes.

(Tr. 19).

The ALJ then evaluated Ms. Stewart's RFC at step four, and the claimant was found to have:

[T]he residual functional capacity to perform a reduced range of unskilled, light work with the ability to occasionally lift/carry up to 20 pounds and frequently lift/carry up to 10 pounds. She should not climb ropes/ladders/scaffolding and not work at unprotected heights or around dangerous, moving unguarded machinery.

(Tr. 19-20 ¶ 5).[5]  The ALJ then later clarified:

_____

[5]  The Regulations define light work as:

(b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide

As discussed above, the claimant is not mentally retarded, but is functioning within an intellectual range consistent with her 8th grade education and work history, which includes both unskilled and semiskilled work. However, to give the claimant the benefit of the doubt, the undersigned restricts the claimant to unskilled work only.

(Tr. 21).

Against this backdrop and in reliance upon testimony from a vocational expert, the ALJ concluded that Ms. Stewart's impairments did not prevent her from performing her past relevant employment as a hand sander or masker. (Tr. 21; *id.* ¶ 6).

It was unnecessary for the ALJ to continue to step five of the sequential analysis due to his finding that Ms. Stewart was able to perform past relevant work. (Tr. 21). Accordingly, the ALJ concluded that Ms. Stewart was not disabled as defined by the Act, and denied her DIB and SSI claims. (Tr. 22; *id.* ¶ 7).

## ANALYSIS

In this appeal, Ms. Stewart generally challenges whether substantial evidence supports the Commissioner's denial of her disability applications and raises several

---

range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through April 19, 2012).

separate issues, including whether the ALJ erred in finding that she does not meet the elements of Listing 12.05C.  (Doc. 7 at 6).  The court turns to the lack of any underlying medical opinion by a physician in support of the ALJ's RFC determination that Ms. Stewart is capable of performing light work with additional restrictions given her severe impairment of lumbar degenerative joint disease and also that she can only handle unskilled jobs after giving her the benefit of the doubt as to an unspecified portion of her claimed mental deficits and agrees with Ms. Stewart that, under the circumstances of her case, the Commissioner has committed reversible error.[6]

I.    **IN THE ABSENCE OF A SUPPORTING MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN THAT CONSIDERS THE IMPACT OF MS. STEWART'S SEVERE IMPAIRMENT, THE ALJ'S PHYSICAL RFC DETERMINATION THAT SHE CAN PERFORM A REDUCED RANGE OF LIGHT WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In support of his RFC determination for Ms. Stewart, the ALJ did not identify to a medical source opinion[7] or a physical capacities evaluation conducted by a

---

[6] As a result, the court does not reach the merits of the other issues presented on appeal.

[7] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'"  SSR 96-5p.

physician that substantiates Ms. Stewart's ability to perform a reduced range of light work given her severe impairment of lumbar degenerative joint disease.[8]  Such an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination.  *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

The court acknowledges that the ALJ did refer within his opinion to several records from various medical providers pertaining to Ms. Stewart.  (Tr. 18 (citing to Exhibits 1F, 2F, 5F, 6F)).  However, for the most part such documentation is reported merely as raw physical findings applicable to Ms. Stewart.  (*See, e.g.*, Tr. 137-45 (radiology reports from Huntsville Hospital); Tr. 146-55 (first set of medical records from Mountain View Family Medicine); Tr. 167-74 (second set of medical records from Mountain View Family Medicine); Tr. 175-79 (third set of medical records from Mountain View Family Medicine)).  Moreover, none of these records includes an opinion about the impact of Ms. Stewart's impairment in <u>vocational</u> terms or attaches a physical capacities evaluation of her.  *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311

---

[8]  The ALJ did mention a physical functional assessment made by a state agency consultant, but did not give it "great weight in that the consultant was not a physician  . . . . [and] did not have the benefit of seeing the claimant and listening to her testimony at the hearing."  (Tr. 21).

("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical capacities evaluation conducted by a physician, that the claimant was not disabled:

> While the Record contains Ms. Rogers' [s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations. Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers' [s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions

(not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted); *cf. Giddings v. Richardson*, 480 F.2d 652 (6th Cir. 1973) ("To meet such a *prima facie* case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment.") (emphasis added).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Ms. Stewart's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records. Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Ms. Stewart by a physician that corroborates the ALJ's determination that she is capable of performing light work with certain non-exertional restrictions despite her severe physical impairment of lumbar degenerative joint disease, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*,

985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted).

Likewise, the ALJ's determination that Ms. Stewart can perform light work with certain non-exertional restrictions is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

## II.    The ALJ's Mental RFC Determination Is Also Deficiently Supported.

Regarding Ms. Stewart's mental work-related limitations, as set forth above, while rejecting her claim of mental retardation in the context of Listing 12.05C, the ALJ nevertheless gave her the benefit of the doubt that she suffers from at least a partial mental impairment and concluded that she would be able to perform only unskilled labor. Such a conclusion appears to be internally inconsistent with the ALJ's rejection of Ms. Stewart's Listing 12.05C claim: If Ms. Stewart's I.Q. scores are invalid and artificially low as the ALJ determined, then why would he be inclined to give Ms. Stewart the benefit of the doubt regarding her impaired mental status in formulating her RFC?

Regardless, once again, the ALJ did not point to an underlying medical source statement or a mental capacities evaluation which substantiates how he determined

14

this mental RFC.  Instead, it appears that the ALJ arbitrarily arrived at Ms. Stewart's mental RFC and additional limitations without the benefit of any corroborating functional proof provided by a physician.  Accordingly, the mental component of the ALJ's RFC determination is also not supported by substantial evidence, and a remand to the Commissioner is appropriate due to this additional reason.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence.   Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 14th day of May, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge